UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR419-072 |
| | ) | |
| KAREN DICKERSON, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

# REPORT AND RECOMMENDATION

Karen Dickerson pleaded guilty to a single count of a lesser included offense of structuring to evade currency transaction reports, in violation of 31 U.S.C. § 5324(a)(3).  *See* doc. 66 (Second Superseding Indictment); doc. 81 (Change of Plea).  After changing her plea, the District Judge ordered that she remain detained pending sentencing, pursuant to 18 U.S.C. § 3143.  *See* Oral Order, docketed Nov. 12, 2019.  Her retained counsel moved for her release from custody, doc. 86, and the District Judge denied that motion, doc. 88.  At her sentencing hearing, Dickerson informed the Court that she wished to withdraw her guilty plea and the hearing was continued.  Doc. 115.  Shortly after the hearing, Dickerson's retained counsel moved to withdraw.  Doc. 119.

After multiple proceedings related to her counsels' motion to withdraw, many of which remain sealed to protect Dickerson's privileged communications, the Court found that Dickerson knowingly waived her right to counsel, and permitted her to proceed *pro se*. Doc. 136. Having permitted her to proceed *pro se*, the Court also permitted her to move for reconsideration of her detention, pending sentencing. *Id.* at 6. The Government opposed. Doc. 137. On July 16, 2020, the Court held a hearing on Dickerson's motion at which several witnesses testified. *See* doc. 138.

## I. BASIS FOR REVISITING DETENTION DETERMINATION

Given her *pro se* status, the precise procedural basis for Dickerson's motion is unsurprisingly obscure.[1] *See, e.g., United States v. Class*, 38 F.

---

[1] The application of a more liberal standard to *pro se* criminal motions is far less robustly established than the application of such a standard in the civil context. *See, e.g., Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' [cit.], and ' a *pro se* complaint, however inartfully pleaded, must be held to a less stringent standard than formal pleadings drafted by lawyers.'" (citations omitted)). The Eleventh Circuit has liberally construed *pro se* defendants' *post-judgment* pleadings. *See United States v. Reid*, 364 F. App'x 554, 556 (11th Cir. 2010). Other Courts of Appeals have recognized a similar practice. *See, e.g., United States v. McDonald*, 326 F. App'x 880, 882 (6th Cir. 2009) ("The federal judiciary often will liberally construe the post-judgment filings of *pro se* criminal defendants 'for efficiency's sake and out of a sense of fairness to pro se petitioners.' (citation omitted)). Despite the relative lack of authority supporting the liberal construction on *pro se* criminal defendants' pleadings, and since—as explained below—the Court has grounds

2

Supp. 3d 19, 23 (D.D.C. 2014) ("The Court construes Defendant's Motions liberally for any relief to which he might be entitled."). Since the basis upon which the Court can revisit Dickerson's detention determination might affect the substantive standard applied to such a reevaluation, the Court considers, in turn, the plausible avenues.

Dickerson has pleaded guilty and is currently detained pending sentencing. The statute governing the detention, pending sentencing, of a defendant who has been found guilty is 18 U.S.C. § 3143. That section generally requires detention. *See, e.g.,* 18 U.S.C. § 3143(a) (directing that "the judicial officer *shall order* that a person who has been found guilty of an offense and who is awaiting imposition or execution of a sentence . . . be detained," unless certain conditions are met (emphasis added)). The Government correctly points out that 18 U.S.C. § 3143, "does not include any mechanism for seeking reconsideration of a prior ruling denying release pending sentencing." *Id.* at 5-6. As discussed below, the other statutory provisions providing review of detention orders are equally unavailing.

---

to reconsider Dickerson's detention pending sentencing, it will construe her presentation liberally.

Among the plausible alternatives for reconsideration of a detention determination is 18 U.S.C. §3142, which both includes authorization to "reopen" detention hearings, *see* 18 U.S.C. § 3142(f)(2), and provides for "temporary release," after a detention determination has been made, *see* 18 U.S.C. § 3142(i). The Government's argues that those terms do not apply to detentions pursuant to § 3143. *See* doc. 137 at 6. In *United States v. Thomas*, the United States District Court for the Northern District of Texas undertook a careful analysis of the statutory framework and the "few courts" that have considered how the provisions of § 3142, and in particular the temporary release provisions of § 3142(i), interact with § 3143. ___ F. Supp. 3d ___, 2020 WL 1694302, at * 2 (N.D. Tex. Apr. 3, 2020). The *Thomas* court's analysis persuasively concludes only those provisions of § 3142 expressly incorporated into § 3143 apply to defendants pending sentencing. *Id.* at * 3. Since that incorporation neither extends to § 3142(i)'s provision for "temporary release," nor § 3142(f)'s provision authorizing "reopen[ing]" a detention hearing, reevaluation of Dickerson's detention cannot proceed under either subsection.

Dickerson's motion also cannot proceed under 18 U.S.C. § 3145. *See* doc. 137 at 6. Section 3145 applies, in part, to review of detention orders

entered by United States magistrate judges. *See* 18 U.S.C. § 3145(a)-(b). It also provides for appeals of detention orders to courts of appeals. *See* 18 U.S.C. § 3145(c). The United States Court of Appeals for the Eleventh Circuit has determined that district courts may exercise the authority, conferred by § 3145(c), to order the release "under appropriate conditions" of "[a] person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), . . . if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c); *see United States v. Meister*, 744 F.3d 1236, 1239 (11th Cir. 2013) (holding "a district court has the authority to release a defendant being detained pursuant to § 3143(a)(2) upon a showing of 'exceptional reasons' under § 3145(c)."). The Government argues that Dickerson cannot proceed pursuant to § 3145(c) for the simple reason that her detention is governed by § 3143(a)(1), not § 3143(a)(2), so, by its terms, § 3145(c) does not apply.[2]

---

[2] The District Judge's order detaining Dickerson pending sentencing states only that it is entered, "pursuant to 18 U.S.C. § 3143(a) . . . ." Doc. 88 at 1. The charge to which Dickerson pleaded guilty, however, shows that the applicable subsection must be § 3142(a)(1), and not (a)(2). Section 3143(a)(2) governs detention of a defendant "who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 . . . ." 18 U.S.C. § 3143(a)(2). Those subparagraphs apply to cases involving "a crime of violence, a violation of section 1591, or an offense listed in 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or

5

*See* doc. 137 at 6. The Court is not entirely convinced that the Government has established that § 3145(c) can *never* be applied to detention pursuant to § 3142(a)(1). Dickerson, however, has not invoked § 3145(c), and the Court will not conjure a complicated statutory argument on her behalf under the guise of liberal construction.³

---

more is prescribed; . . . an offense for which the maximum sentence is life imprisonment or death; . . . [or] an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46 . . . ." 18 U.S.C. § 3142(f)(1)(A)-(C). The charge to which Dickerson pleaded guilty does not fit into any of those categories. To the extent, then, that § 3145(c) is limited to detentions in cases of those types, it does not apply to Dickerson.

³ Despite the textual appeal of the Government's construction, § 3145(c) may not be as limited as the Government contends. In the statutory scheme of § 3143, subparagraph (a)(2) applies to cases involving more "serious" (in a purely colloquial sense) offenses. *See, e.g., United States v. Herrera-Soto*, 961 F.2d 645, 646 (7th Cir. 1992) (summarizing the application of § 3143(a)(2) to convictions for "crimes of violence, crimes with a life sentence and drug crimes with a maximum sentence of ten years or more."). On the one hand, to the extent that § 3145 creates a procedure for review of detentions based on those more "serious" charges, it would seem *a fortiori* to apply to the less "serious" offenses governed by § 3143(a)(1). In short, why should the statute permit release of those guilty of "serious" offenses pending sentencing upon a showing of exceptional circumstances, while denying such relief to less "serious" offenders? On the other hand, the Court might construe § 3145(c) as providing an alternative *only* to the additional showings required under § 3142(a)(2)(A)(i)-(ii). Under that construction, § 3145(c) permits a defendant subject to those requirements to show, instead, "exceptional reasons" why detention is inappropriate. In that case, it would be inapplicable to § 3143(a)(1), which does not impose those requirements in the first place. Resolution of such arguments, and, indeed, any additional arguments that have not occurred to the Court, would be inappropriate in the absence of adversarial briefing by the parties. Undertaking complex statutory constructions strains the obligation of "liberal" treatment of a *pro se* defendant past the breaking point. *See, e.g., Portnoy v. United States*, 811 F. App'x 525, 533 (11th Cir. 2020) ("a court may not serve as *de facto* counsel for a [*pro se*] party . . . ." (internal quotation and citation omitted)).

The lack of any statutory provision expressly authorizing the Court's reevaluation of Dickerson's detention is not, however, fatal.  The Government concedes that the substance of her motion can be considered "under the standard applied to general motions for reconsideration." Doc. 137 at 6.  "Although the Federal Rules of Criminal Procedure do not specifically authorize motions for reconsideration, both the Supreme Court and [the United States Court of Appeals for the Eleventh Circuit] have permitted parties to file such motions in criminal cases." *Serrano v. United States*, 411 F. App'x 254, 255 (11th Cir. 2011) (citing *United States v. Phillips*, 597 F.3d 1190, 1199-1200 (11th Cir. 2010)); *see also, e.g., United States v. Faller*, 2020 WL 1502983, at * 1 (S.D. Ga. Mar. 24, 2020) (Hall, C.J.).  "In deciding motions for reconsideration in criminal cases, courts use the standards applicable to such motions filed in civil cases under Federal Rule of Civil Procedure 59. [Cit.]  The movant must show (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or manifest injustice." *Faller*, 2020 WL 1502983, at * 1 (internal quotations, citations, and alterations omitted).  The Court will, therefore, construe Dickerson's

request under the standards applicable to motions for reconsideration, in the criminal context.

## II.  RECONSIDERATION OF DICKERSON'S DETENTION

The standard for reconsideration of a prior order is exacting. *See United States v. Kelly*, 2019 WL 5328722, at * 2 (S.D. Ga. Oct. 18, 2019) ("In the criminal context, motions to reconsider should not simply rehash previously litigated issues and must be used sparingly." (internal quotations, citation, and alterations omitted)). No party disputes that there has been no change in the controlling law since Dickerson was ordered detained. Nor does any party contend that the District Judge's detention determination must be revisited to correct a clear error or manifest injustice. The only ground, then, upon which Dickerson might be entitled to reconsideration is where new evidence has become available. The Court should find that there is such evidence.

In the context of a motion for reconsideration, "new evidence" is not merely evidence that was not previously presented. *See, e.g., Mays v. United States Postal Serv.*, 122 F.3d 43, 46 (11th Cir. 1997) (holding that "where a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some

showing that the evidence was not available during the pendency of the motion."). As the below discussion of the evidence shows, it is questionable, at best, whether Dickerson presented any evidence that was not available to her at the time of the Court's original detention order. Nevertheless, the evidence she has presented takes on a necessarily new character in the present context.

Dickerson was originally ordered detained after her change of plea hearing in November 2019. *See* Oral Order, docketed Nov. 12, 2019. She filed a motion for release on November 17, 2019, doc. 86, which was denied on December 18, 2019, doc. 88. On March 17, 2020, this Court "observ[ed] that the President of the United States has declared a National Emergency throughout the nation in response to the spread of coronavirus; the Governor of the State of Georgia has declared a public health emergency throughout the state in response to the spread of the corona virus; the World Health Organization has declared coronavirus a pandemic; and the Center[s] for Disease Control and Prevention and other public health authorities have advised taking of precautions to reduce the possibility of exposure to the virus and slow the spread of the disease." *In re COVID-19 Public Health & Safety*, MC120-004, doc. 1 (S.D. Ga. Mar. 17, 2020). While

the evidence Dickerson presented at the hearing may have been available to her when the original detention determination was made, the probative value of that evidence is altered in a way that could not have been anticipated at that time. As such, Dickerson has identified "new evidence"[4] sufficient to warrant reconsideration of her detention.

Assuming that the singular context of the COVID-19 pandemic sufficiently alters the character of the evidence bearing on detention to render it "new," disposition of Dickerson's motion depends upon whether that new evidence satisfies the requirements of § 3143.[5] The Government

---

[4] The Court discusses the "novelty" of the evidence presented in the below discussion of § 3143's substantive requirements. Despite the Court's conclusion that the character of the facts is substantially altered by the advent of the COVID-19 pandemic, no new facts were presented. That is, none of the witnesses pointed to specific facts that had changed between then and now. The novelty does arise from the *facts* themselves, but in the *evidentiary value* of those facts. It may be clear from the beginning of an investigation that a dog did not bark in the nighttime. As the context develops, however, that same silence may take on a completely novel significance. *Cf. Thomas v. Pierce, Hamilton, & Stern, Inc.*, 967 F. Supp. 507, 508 n. 2 (N.D. Ga. 1997) ("In *Silver Blaze*, Sherlock Holmes deduces from a dog's failure to bark that it was the trainer who attempted to harm a valuable horse." (citing Sir Arthur Conan Doyle, *Silver Blaze*, in THE COMPLETE SHERLOCK HOLMES 383, 400 (1953)).

[5] Although the Court concludes that COVID-19 provides a transformative context to evaluate the evidence, Dickerson has not argued that it provides an independent reason for her release. As the pandemic has developed, courts have coalesced around a set of factors to evaluate whether a particular defendant should be released. *See United States v. Clark*, ___ F. Supp. 3d. ___, 2020 WL 1446895, at * 3 (D. Kan. Mar. 25, 2020) (listing factors to be considered in evaluating whether to release a defendant on the basis of their disease-based risk). Since Dickerson has not sought release based on her risk from COVID-19, the Court has not considered those factors.

contends that, regardless of the propriety of reconsideration, Dickerson cannot satisfy those standards. Doc. 137 at 7. As discussed above, *see supra* at 5 n. 2, it is clear that Dickerson's detention pending sentencing is governed by § 3143(a)(1). Under that subsection, there is a presumption of detention upon conviction. It directs that "the judicial officer *shall* order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community," if released. 18 U.S.C. § 3143(a)(1) (emphasis added). Her burden on reconsideration remains the same: she must demonstrate by clear and convincing evidence that (1) she is not likely to flee and (2) that she is not likely to pose a danger to the safety of any other person or the community, "if released under section 3142(b) or (c)."[6] In evaluating whether a defendant has made such a showing, courts often refer to the factors enumerated under 18 U.S.C. § 3142(g). *See, e.g., United States v. Sturmer*, ___ F. Supp. 3d ___, 2020 WL 20977076, at * 3 (D. Md. May 1,

---

[6] The distinction between subparagraphs (b) and (c) of § 3142 are discussed more fully below.

2020) (applying § 3142(g) factors to evaluate detention pursuant to § 3143(a)(1)); *United States v. Sykes*, ___ F. Supp. 3d ___, 2020 WL 1846946, at * 2 (E.D. Mich. Apr. 13, 2020) (same); *United States v. Majors*, 932 F. Supp. 853, 855 (E.D. Tex. 1996) ("Among factors the district court should consider in determining whether to grant a convicted defendant's motion for release pending sentencing are those factors enumerated in 18 U.S.C. § 3142(g) governing pretrial release." (citing *United States v. Vance*, 851 F.2d 166, 169-70 (6th Cir. 1988)). Dickerson has made such a showing.

In determining whether a defendant poses a risk of flight or danger to the community, courts are instructed to consider several factors. *See* 18 U.S.C. § 3142(g). Those factors include: (1) "the nature and circumstances of the offense charged," including several potential aggravating circumstances; "the weight of the evidence against the person;" the defendants "history and characteristics," including, among others, "character, . . . , family ties, employment, . . . , community ties, past conduct, . . . , criminal history, and record concerning appearance at court proceedings; and "the nature and seriousness of the danger to any person or the community . . . ." 18 U.S.C. § 3142(g)(1)-(4).

The Government contends that Dickerson is a flight risk. *See* doc. 137 at 8-10. The Government, which it must be remembered does not bear any evidentiary burden, points to the seriousness of the conduct underlying Dickerson's guilty plea and her "lengthy criminal history, that includes eleven theft[-]based convictions, three criminal trespass convictions., and two forgery convictions." *Id.* at 9. It also points to an alleged "long history of [defendant] providing false information to law enforcement to avoid the repercussions of her criminal conduct, providing law enforcement with various fictitious names on no fewer than four occasions." *Id.* Finally, the Government points to defendant's asserted intent to seek to withdraw her guilty plea as "indicative of her continuous efforts to avoid responsibility for her actions and strong desire to evade the consequences of her criminal conduct." *Id.*

In contrast, Dickerson's presentation at the hearing paints her as an individual with significant ties to the Savannah community. Dickerson presented fully credible testimony from several witnesses, all of whom testified to her longstanding business ties to Savannah. First, Samuel Huggins, who testified that he operates a construction rental company and a real estate rental company, has employed Dickerson and her company to

13

provide custodial and maintenance services since 2015. Katherine Alder, a director of the Ships of the Sea Museum, testified to a multi-year relationship with Dickerson and her company. Ms. Alder also testified that, if Dickerson were released, the museum would continue the relationship.[7] Finally, Kenneth Grant, pastor at Calvary Baptist Church in Savannah, testified that he has known Dickerson as a member of his congregation for more than five years. The Court is convinced that Dickerson's considerable ties to the community and the limitations on travel imposed by COVID-19, permit the imposition of conditions sufficient to reasonably assure her appearance. The Court is also unconvinced by the Government's argument that Dickerson's avowed intention to move to withdraw her guilty plea bears on her suitability for release on conditions. The Court's consideration of her criminal history is discussed below.

The Government also contends that Dickerson is a danger to the community and, specifically, a danger to Kevin Whitfield, an individual with whom she maintained a long, if tumultuous, romantic relationship

---

[7] It was not clear from Ms. Alder's testimony whether Dickerson's company continued to provide services while this case has been pending, or while Dickerson has been detained.

and Mr. Whitfield's current "romantic partner."[8]  *See* doc. 137 at 10-12. The Government further points out that Dickerson has an extensive criminal history, including "twenty-three adult convictions, starting at age nineteen and continuing until age fifty-one with her guilty plea in this case," as well as "twenty-five arrests for other criminal conduct . . . ." *Id.* at 10.

Dickerson presented evidence, on the contrary, that much of her criminal history occurred in the relatively distant past.[9] She conceded that her interactions with Whitfield have been contentious, and occasionally violent. Several witnesses testified that the conflict was not Dickerson's sole responsibility; and, in the opinion of several, Whitfield had provoked or exacerbated the conflict. Dickerson also argued that many of the arrests included in her criminal history amounted to nothing more than

---

[8]  The other individual implicated and suggested to be Whitfield's current romantic partner is not a party to this case. The Court will, therefore, not include her name in this discussion.

[9]  The sealed Presentence Investigation Report indicates that Dickerson had a series of convictions between 1988 and 2003. *See* doc. 105 at 13-20. Since 2003, she has been convicted of several traffic infractions ("speeding" and "tinted windshield") and one for operating an illegal rooming house. *Id.* at 20-21. She was also convicted in 2009 of disorderly conduct arising out of a dispute with Whitfield. *Id.* at 21. Her arrest history, for the last ten years has included incidents involving Whitfield and traffic violations. *See id.* at 26-28.

Whitfield's allegations of misconduct.[10]  The COVID-19 pandemic has severely curtailed the public's opportunity to socialize.  The witnesses who testified at the hearing indicated their belief that Dickerson would be able to comply with a condition to avoid all contact with Whitfield, notwithstanding those additional limitations.  To the extent that the pandemic limits the public activity and socialization, generally, the Court is even more convinced that a specific no-contact condition is likely to be effective.

The question, then, is whether the evidence Dickerson presented amounts to "clear and convincing" evidence that she is not likely to flee or pose a danger, "if released under section 3142(b) or (c)."  18 U.S.C. § 3143(a).  The Court remains convinced that she has not borne her burden that her release on personal recognizance or unsecured bond, pursuant to § 3142(b), is appropriate.  Her presentation does, however, amount to clear

---

[10]  The sealed Presentence Investigation Report is consistent with Dickerson's characterization.  It reflects an arrest related to alleged shoplifting in 2008, which does not appear to have resulted in a conviction.  *See* doc. 105 at 26.  After that arrest, she was arrested for traffic offenses (speeding and being a "[h]abitual violator or [her] probationary driver's license, failure to have her license on her person, and driving on a suspended registration).  *Id.* at 26, 28.  Every other arrest since 2008 reflects Whitfield's involvement.  *Id.* at 26-28.  Other than the simple battery and criminal trespass charges that resulted in her current detention, *see id.* at 23, none of those arrests resulted in conviction.

and convincing evidence that she is not likely to flee or pose a danger, if released subject to conditions, pursuant to § 3142(c). Specifically, the Court is convinced that Dickerson has presented clear and convincing evidence that her appearance would be reasonably assured by a bond and conditions permitting the United States Probation Office to monitor her location. The safety of others and the community could be reasonably assured by the combination of monitoring conditions and an additional condition specifically prohibiting her from having any contact with Kevin Whitfield, including a condition that she report to her supervising officer any contact Whitfield, or anyone acting on his behalf, attempts to initiate, by any means.

## III. CONCLUSION

Because the Court recommends that the District Judge find that Dickerson has shown by clear and convincing evidence that she is neither a risk of flight or a danger to the community, her request for release on conditions pending sentencing should be **GRANTED**. Doc. 132. In addition to the conditions imposed on Dickerson's pre-trial release, *see* doc. 20, the Court agrees with the Government that special conditions are appropriate. The Court agrees with the Government that location

monitoring is appropriate. *See* doc. 137 at 12. The Court also agrees that a special condition prohibiting "contact with the victims of the state offenses [*i.e.,* Mr. Whitfield and his new romantic partner], including entry onto any of their real property," is appropriate. *Id.* If the recommendation of release on conditions is adopted by the District Judge, the Court also recommends a special condition prohibiting Dickerson from approaching within 500 yards of that real property. *See* 18 U.S.C. § 3142(c)(1)(B)(iv) (permitting, as a condition of release, that defendant "abide by specified restrictions on . . . travel"). In addition, the Court recommends that Dickerson be required to report to the supervising officer *any* contact or attempted contact by Whitfield, or any other person acting on his behalf, as soon as practicable, but in no event later than the next calendar day. *See id.* (permitting, as a condition of release, that defendant "abide by specified restrictions on personal associations"). Finally, the Court recommends that Dickerson be required to sign an Appearance Bond in the amount of $100,000, secured by $10,000 in cash deposited with the court.

      This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this

Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this <u>9th</u> day of September, 2020.

*/s/ Christopher L. Ray*
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA